```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
HERON JAMES DOUGLAS,

                          Plaintiff,
                                                        MEMORANDUM
                                                        & ORDER
            -against-
                                                        03 CV 205 (SLT) (LB)

HIP CENTRALIZED LABORATORY
SERVICES, INC.,

                          Defendant.
--------------------------------------------------X
TOWNES, U.S.D.J.
```

Defendant moves for summary judgment on Plaintiff's Title VII retaliation claim. Based on the written submissions of the parties and oral argument held on January 21, 2005, and for the reasons set forth below, the Defendant's motion is DENIED.

*BACKGROUND*

Heron Douglas ("Plaintiff") was employed by Centralized Laboratory Services ("CLS" or "Defendant") from November 1973 to June 26, 1997, when he was fired from the company. (Def. Rule 56.1 ¶¶ 2, 9.) During his employment with Defendant, Plaintiff held various positions, the last of which was as an assistant supervisor in CLS's computer department. (Def. Rule 56.1 ¶ 3.) Plaintiff last reported to work on October 16, 1992; from that point forward he was unable to return to work due to illness. (Def. Rule 56.1 ¶ 4, 5.) Defendant continued to employ Plaintiff and provide him with medical coverage during the nearly five year period of his illness-induced absence from work. (Def. Rule 56.1 ¶ 6.)

On February 19, 1993[1], while still employed by Defendant, Plaintiff filed a complaint with the New York City Commission on Human Rights and the United States Equal Employment Opportunity Commission ("EEOC") alleging race discrimination by Defendant. (Def. Rule 56.1 ¶ 11.) Pursuant to a "right to sue" letter from the EEOC, Plaintiff filed a race discrimination lawsuit against Defendant in the Eastern District of New York on February 13, 1995. (Def. Rule 56.1 ¶¶ 12, 13.) Plaintiff voluntarily discontinued this lawsuit in 1997 and did not subsequently re-file his race discrimination claim against Defendant. (Def. Rule 56.1 ¶ 16.) Plaintiff concedes that from the time he filed the race discrimination lawsuit against Defendant in February 1995 up until his termination in June 1997 he was not subject to any adverse employment action. (Def. Rule 56.1 ¶ 15; Pl. Rule 56.1 ¶ 15; Pl. Depo. at 122.)

During the course of discovery in Plaintiff's race discrimination lawsuit, and in response to document requests made by the Defendant, Plaintiff produced to Defendant copies of CLS documents that he had in his possession which contained patient information. (Def. Rule 56.1 ¶¶ 19, 22.) Specifically, Plaintiff produced to Defendant the following four documents, which he possessed outside of CLS:

- A CLS computer worksheet containing 26 patient names and results of their medical and laboratory tests
- A CLS computer worksheet containing 27 patient names and results of their medical and laboratory tests
- Plaintiff's handwritten notes referencing CLS worksheets with patient data
- A CLS patient requisition form containing a patient's name and indicating which medical and laboratory tests had been requisitioned for the patient

---

[1] Defendant states incorrectly that the complaint was filed on October 2, 1992, which was actually the date it was notarized. (Def. Ex. 10.)

(Def. Rule 56.1 ¶¶ 24-27; Pl. Depo. at 66-81, Def. Exs. 5-8.)[2]

At the time of Plaintiff's employment, Defendant maintained a written Employee Manual of Personnel Policies ("Manual"), which Plaintiff was responsible for providing to all CLS employees whom he hired and which he possessed a copy of in his personal files. (Def. Rule 56.1 ¶¶ 29-32; Pl. 1997 Depo. (Def. Ex. 2) at 68-69.)[3] The Manual contains the following language:

> CONFIDENTIAL INFORMATION
> It is important for all laboratory employees to remember to keep information about patients confidential. A patient's illness and laboratory data are private and it is the obligation of every member of the laboratory with access to that information to keep it strictly confidential. No records are to be discussed, removed, copied, or transmitted to anyone except authorized persons.
>
> \*   \*   \*
>
> GUIDELINES FOR COOPERATION
> Common sense, good judgment, and appropriate personal behavior are part of the essential responsibility of every employee in the Laboratory. The following are some of the violations that are considered serious and will result in disciplinary action or dismissal:
>
> \*   \*   \*
>
> 19. Unauthorized possession, use, copying, or reading of laboratory records, or disclosure of information contained in such records to unauthorized persons.

(Def. Rule 56.1 ¶¶ 33, 34; Def. Ex. 4.)[4]

---

[2] Plaintiff denies possessing these documents in his Rule 56.1 statement, but he clearly admitted to possessing these particular documents in his deposition testimony, except that he never admitted to attaching a CLS worksheet containing patient information to his handwritten notes, as Defendant asserts in paragraph 26 of its Rule 56.1 statement.

[3] Once again, Plaintiff denies these facts in his Rule 56.1 statement but admitted them in his deposition testimony. However, Plaintiff did dispute in his deposition that the policies contained in the Manual applied to him as a supervisor (Pl. Depo. at 63), so he cannot be said to have conceded that the policies in the Manual were "applicable to all employees," as stated by Defendant.

[4] Plaintiff denies in his Rule 56.1 statement that this language is contained in the Manual, based apparently on his refusal to concede either that he knew of the Manual's policies or that they applied to him, but as he nowhere contests that the copy of the Manual submitted by Defendant was the one in effect

On June 26, 1997, Defendant provided Plaintiff with a letter terminating his employment and setting forth the reason for his discharge as his actions in copying, removing, and disclosing to third persons several CLS documents containing confidential patient information in violation of CLS policy. (Def. Rule 56.1 ¶ 9; Def. Ex. 9.) Plaintiff argues that this reason was pretextual and that he was actually fired in retaliation for his discrimination and worker's compensation lawsuits against Defendant.

*DISCUSSION*

I.  Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact" such that the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To be "genuine," an issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party," *Holtz*, 258 F.3d at 69, and "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Alston v. New York City Transit Authority*, 2003 U.S. Dist. LEXIS 21741, at *4 (S.D.N.Y. Dec. 3, 2003) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

when he was an employee, there seems to be no reason to doubt that it was, as the Manual states that it was "Revised February 1982." (Def. Ex. 4.)

Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees...because [such employee] has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a) (citations omitted). Title VII is violated when "a retaliatory motive plays a part in adverse employment actions towards an employee, whether or not it was the sole cause." *Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003) (quoting *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)) (internal quotation marks omitted). The burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for discrimination claims applies as well to retaliation claims brought under this statute. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). In the context of a motion for summary judgment, a plaintiff must first demonstrate a prima facie case for retaliation by showing that he "engaged in protected activity, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Sands v. Runyon*, 28 F.3d 1323, 1331 (2d Cir. 1994) (quoting *Sumner v. United States Postal Service*, 899 F.2d 203, 208-209 (2d Cir. 1990)). A plaintiff's burden in making out a prima facie case is "de minimis." *Richardson v. N.Y. State Dept. of Correctional Serv.*, 180 F.3d 426, 444 (2d Cir. 1999) *(quoting Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir. 1994)).

Once a plaintiff has established a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment

decision. If a defendant meets this burden, 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Treglia*, 313 F.3d at 721 (quoting *Cifra v. General Electric*, 252 F.3d 205, 216 (2d Cir. 2001)).

II. Prima Facie Case

Plaintiff has established the first three elements of a prima facie case. In filing his race discrimination lawsuit, first with the EEOC and then with this Court, Plaintiff engaged in protected activity. *See Thomas v. New York City Health & Hosps. Corp.*, 2004 U.S. Dist. LEXIS 17694, at *61 (S.D.N.Y. Sept. 1, 2004). As CLS actively defended this lawsuit since its filing in 1995, it possessed the requisite knowledge to satisfy the second requirement. *Gordon v. New York City Board of Ed.*, 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."); *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 311 (plaintiff's filing and maintaining of an EEOC complaint put defendant corporation on notice that she was engaging in statutorily protected activity). Finally, termination of employment constitutes an adverse employment action. *Duviella.v. Counseling Serv.*, 2001 U.S. Dist. LEXIS 22538, at *62-63 (E.D.N.Y. Nov. 20, 2001); *Galabya v. N.Y.C. Board of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

The dispute here centers over the fourth element of the prima facie case -- whether a causal connection exists between Plaintiff's protected activities and his termination. Proof of a causal connection can be established "directly through evidence of retaliatory animus directed against a plaintiff...or indirectly by showing that the protected activity was followed closely by

discriminatory treatment." *Richardson,* 180 F.3d at 444 (quoting *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)).

Plaintiff argues that Defendant's chief operating officer ("COO"), Marc Wolfert, exhibited retaliatory animus by firing him soon after he engaged in protected discovery practices and without first conducting an investigation into the circumstances surrounding his possession of the allegedly confidential documents. However, these allegations do not constitute "direct" evidence of retaliatory animus as has been required by courts. *See Mandell v. County of Suffolk*, 316 F.3d 368, 383-84 (2d Cir. 2003) (finding direct evidence of retaliatory animus in failure to promote where superiors told the employee that he should learn to "keep his mouth shut" and that "baggage" from his testimony about anti-semitism in the police department could adversely affect his career); *Rose v. N.Y. City Bd. of Ed.*, 257 F.3d 156, 158, 162 (2d Cir. 2001) (employer's comments to plaintiff that he would replace her with someone "younger and cheaper" if she didn't follow his instructions evidence of retaliatory animus); *Macri v. Newburgh Enlarged City Sch. Dist.*, 2004 U.S. Dist. LEXIS 10515, at *55-56 (S.D.N.Y. June 7, 2004) (using an employee's "bickering" with a fellow employee whom she had accused of sexual harrassment as explanation for failure to promote her direct evidence of retaliatory animus); *Walter v. Westdeutscher Rundfunk, ARD Germ.*, 2004 U.S. Dist. LEXIS 8181, at *27 (S.D.N.Y. May 11, 2004) (employer's comment to employee after previous termination that he had fired her in retaliation for her complaining about him evidence of retaliatory animus for second termination); *Risna v. ABC, Inc.*, 219 F. Supp. 2d 568, 571 (S.D.N.Y. 2002) (email to employee that she could no longer work on the promised project because she was suing the company evidence of retaliatory animus).

Plaintiff also argues that his termination closely followed his participation in protected activities, thus indirectly establishing a causal connection evidencing retaliation. Defendant correctly argues that Plaintiff cannot establish the requisite temporal connection by using the filing of either the EEOC or E.D.N.Y. complaints as the protected activity, as they occurred five and two years, respectively, prior to plaintiff's termination, which is too far removed as a matter of law to suggest causality. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (holding that the temporal proximity between the statutorily protected activity and the adverse employment action must be "very close" to establish the causal connection required to support a prima facie case of retaliation in violation of Title VII, and citing with approval cases dismissing retaliation claims where there were three and four month periods between the protected activity and the termination after noting that "action taken...20 months later suggests, by itself, no causality at all"); *Butler v. Raytel Med. Corp.*, 2004 U.S. Dist LEXIS 26023, at *13-14 (E.D.N.Y. Aug. 31, 2004) (Johnson, J.) (one year gap between protected activity and adverse employment action too long to infer causality); *Jones v. Potter*, 2004 U.S. Dist LEXIS 5035, at *28-29 (W.D.N.Y. Feb. 2, 2004) (noting that there is no bright line defining the outer limits beyond which temporal proximity is too attenuated, but holding that in any event eleven months is too long); *Gurry v. Densmore*, 2003 U.S. Dist. LEXIS 6161, at *18 (S.D.N.Y. Apr. 14, 2003) (fifteen months too remote to establish a causal connection).

However, the filing of a complaint is not the only activity deemed "protected" under Title VII. As noted in *Lawson v. FRB*, 2004 U.S. Dist. LEXIS 12449, at *29 (S.D.N.Y. July 1, 2004), the definition of a protected activity is premised upon the language in the statute, which makes it

unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (quoting 42 U.S.C. § 2000e-3(a))). Courts have held that such affirmative activities as requesting a right to sue letter from the EEOC, notifying co-workers that they might be called to testify, and serving deposition notices on the opposing party[5] meet the "relatively low threshold" required to satisfy the requirement that the Plaintiff have engaged in a protected activity. *See McGrory v. City of New York*, 2004 U.S. Dist LEXIS 20425, at *28 (S.D.N.Y. Oct. 8, 2004) (right to sue letter); *Treglia*, 313 F.3d at 721 (notifying co-workers that they might be contacted after submitting a witness list); *Richardson*, 180 F.3d at 446-47 (deposition notices).

Plaintiff's testimony at his deposition must also be considered a protected activity. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) (holding that even involuntarily given deposition testimony is protected after noting that "[t]he anti-retaliation provision [of Title VII] is straightforward and expansively written. Congress chose the language 'testified' and 'participated in any manner' to express its intent about the activity to be protected against retaliation. The word 'testified' is not preceded or followed by any restrictive language that limits its reach"); *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 414 (4th

---

[5] Plaintiff does argue that his service of deposition notices in October 1996, eight and a half months prior to his termination, establishes the requisite causal connection. However, the case law indicates that this is too temporally remote to raise the requisite inference of retaliation, at least without some other indicia of retaliatory intent. *Donlon v. Group Health, Inc.*, 2001 U.S. Dist LEXIS 1001, at *3 (S.D.N.Y. Feb. 8, 2001) (eight and a half month gap too long to support inference); *Lichtenstein v. Triarc Cos.*, 2004 U.S. Dist. LEXIS 8610, at *22 (S.D.N.Y. May 14, 2004) (six months too long); *Lambert v. N.Y. Office of Mental Health*, 2000 U.S. Dist. LEXIS 5197, at *13 (E.D.N.Y. 2000) (five-month period too great to establish causation); *Cobian v. New York City*, 2000 U.S. Dist LEXIS 17479, at *64-65 (S.D.N.Y. Dec. 6, 2000) (standing alone, a four month lapse between protected activity and adverse action insufficient evidence of a causal connection); *but see Suggs v. Port. Auth.*, 1999 U.S. Dist. LEXIS 6319, at *6 (S.D.N.Y. 1999) (finding six month period sufficient to raise inference of retaliation).

Cir. 1999) ("A straightforward reading of the statute's unrestrictive language leads inexorably to the conclusion that all testimony in a Title VII proceeding is protected against punitive employer action."); *EEOC v. Locals 14 and 15, Int'l Union of Operating Eng.*, 438 F. Supp. 876, 881 (S.D.N.Y. 1977) ("Testimony in court in a Title VII action and filing of EEOC charges...are clearly what was intended to be meant by protected participation under section 704(a) [of TitleVII].").

Plaintiff's termination by Defendant within a month of his deposition testimony[6] establishes the requisite causal connection to satisfy the final element of Plaintiff's prima facie case. *See Cifra*, 252 F.3d at 217 (finding causal connection based on fact that only twenty days had elapsed between protected activity and termination); *Treglia*, 313 F.3d at 721 (one month gap sufficient to establish the required causal link for a prima facie case); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (error to grant summary judgment where plaintiff's "discharge came less than two months after she filed a complaint with [defendant's] management and just ten days after she filed a complaint with the [State Division of Human Rights]"); *McGrory*, 2004 U.S. Dist LEXIS 20425, at *24 (holding that a "gap of only one or two months between the [protected activity and adverse employment action] is clearly sufficient" to establish the requisite causal connection); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) ("A period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related.").

---

[6] There seems to be some dispute between the parties as to when Plaintiff was deposed -- Plaintiff submitted the cover page of a deposition transcript from June 13, 1997 (Pl. Ex. 8), while Defendant submitted portions of Plaintiff's deposition taken on May 29, 1997 (Def. Ex. 2). In any event, the difference between two weeks and one month has no effect on the causal connection analysis.

III.     Proffered Reasons for Termination

Once a plaintiff has established a prima facie case of retaliation, a defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action in order to avoid the denial of summary judgment.  *Treglia*, 313 F.3d at 721.  Defendant states that it fired Plaintiff because of his possession, use, and disclosure of confidential patient information in violation of company policy, which Defendant learned of when Plaintiff produced documents containing the confidential information as part of its response to Defendant's document requests.  In support, Defendant points to its Manual, which provides that patient information is to be kept strictly confidential, and that records are not to be "discussed, removed, copied, or transmitted to anyone except authorized persons."  Defendant also relies on the provision stating that "unauthorized possession, use, copying, or reading of laboratory records, or disclosure of information contained in such records to unauthorized persons" is a serious violation that will result in disciplinary action or dismissal.  While the Manual does not define "unauthorized" possession or use or specify who is to be considered an "unauthorized" person for purposes of disclosure, Defendant's COO Marc Wolfert testified that maintaining patient information outside of the laboratory "would never have been appropriate," as such information should not leave the facility. (Wolfert Depo. at 57-58, 73).  Thus, Defendant's belief that Plaintiff violated company policy in possessing and disclosing documents containing confidential patient information constitutes a legitimate, non-discriminatory reason for terminating Plaintiff's employment.  *See Shider v. Comm'n Workers of Am.*, 2004 U.S. Dist. LEXIS 5068, at *16-17 (S.D.N.Y. Mar. 26, 2004) (holding that employer's evidence that employee violated company policy by disclosing confidential client information constituted a legitimate, non-discriminatory reason for

terminating the employee); *Hayles v. Advanced Travel Mgmt. Corp.*, 2003 U.S. Dist. LEXIS 23407, at *64-66 (S.D.N.Y. Dec. 31, 2003) (employers' assertion that employee was chastised because they believed that she had circulated false rumors and disclosed confidential information sufficient to satisfy their burden of production at this stage); *Jordan v. Olsten Health Svcs.*, 111 F. Supp. 2d 227, 233-34 (W.D.N.Y. 2000) (employer's belief that employee had violated company policy by improperly disclosing salary figures for administrative personnel qualifies as a legitimate, non-discriminatory reason for termination).

IV. Evidence of Retaliation

As the Defendant has articulated a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff, the presumption of retaliation raised by Plaintiff's prima facie case "drops out of the picture" and Plaintiff is left to prove that he was, in fact, the victim of retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508-11 (1993). This district has described the Court's task at this juncture as follows:

> In determining whether summary judgment is appropriate, the court must make a "case-by-case" determination based on a review of the entire record. *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000). An employer will be entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James* [*v. New York Racing Assoc.*, 233 F.3d 149, 154 (2d Cir. 2000)]. The court may consider factors including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] that employer's case..." *Id.* at 156 (quoting *Reeves* [*v. Sanderson Plumbing Prod.,* 530 U.S. 133, 148-49 (2000)]) (brackets added in quotation). A plaintiff's prima facie case alone, combined with a showing that the employer's asserted justification is false, although not always sufficient, may in some instances permit a finding of discrimination. *See Reeves*, 530 U.S. at 147-48.

*Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 214 (E.D.N.Y. 2001) (Amon, J.).

Plaintiff argues that Defendant's proffered reason for terminating him is pretextual and that Defendant actually fired him because he refused to drop his worker's compensation lawsuits and to accept a settlement of "peanuts" in his discrimination case despite pressure from Defendant to do so. (Pl. Depo. at 135, 138-39.) Plaintiff argues that his actions in possessing the CLS documents at issue did not violate company policy and therefore did not warrant termination.  Plaintiff testified at his deposition in this case that he was unaware at the time of his employment with CLS of any policy prohibiting removal of documents containing patient information from the laboratory (Pl. Depo. at 62), even though he previously testified in his 1997 deposition that he provided copies of the Manual to new hires and "more or less" kept a copy in his personal files, though he denied ever having reviewed it.  (Pl. 1997 Depo. at 68-69.)  Plaintiff admitted to knowing that patient results were supposed to be kept confidential, but stated that he understood "confidential" to mean only that he could not give them to "someone on the outside who doesn't pertain to your job or your litigation." (Pl. Depo. at 62-64.)  Plaintiff further testified that even if such policies prohibiting removal of patient information existed they did not apply to him, as he was not only allowed to take documents containing patient data home as part of his regular duties as a supervisor (Pl. Depo. at 51, 63), he was also instructed by two of his managers -- Mr. Stewart and Dr. Rappaport -- to correct the errors in the specific documents at issue and then to "keep a log" of all such errors.  (Pl. Depo. at 67-69, 74-75).  Plaintiff testified that he did not return the documents to work after he went on disability leave because no one asked for them and because he did not know when he would be returning to work.  (Pl. Depo. at 81, 145).  Plaintiff further testified that he believed that his provision of these documents to his attorney did not constitute disclosure to an "unauthorized " person and that he only introduced

them into the litigation because he was legally obligated to turn the documents over to Defendant in response to Defendant's document requests. (Pl. Depo. at 146.) Finally, Plaintiff argues that Defendant's failure to investigate the circumstances surrounding his possession of these documents indicates that this could not have been the real reason for his termination.

Defendant argues, quite correctly, that the focus of a pretext analysis is not whether a defendant's stated reason for the adverse action was unwise or unreasonable, but only whether it was the actual reason for the challenged action. *Demarco v. Holy Cross High School*, 4 F.3d 166, 170-71 (2d Cir. 1993); *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1998). Thus, even if Defendant "conducted a shoddy investigation into the allegations and subsequently made a poorly informed decision" to fire Plaintiff, he can find no protection under Title VII. *Jordan*, 111 F. Supp. 2d at 236.

However, Plaintiff's testimony that Defendant did not follow its own policies in authorizing supervisors like Plaintiff to take home documents containing patient information can be evidence of pretext. *See Demarco,* 4 F.3d at 171 (noting that the pretext inquiry properly focuses upon "factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules [and] whether the rule applied to plaintiff has been applied uniformly"); *Gurry v. Densmore*, 2003 U.S. Dist. LEXIS 6161, at *21 n.10 (S.D.N.Y. Apr. 14, 2003) (noting that evidence that defendants inconsistently applied their disciplinary policy has been held to be sufficient evidence of pretext). While it is true that Plaintiff has provided no affirmative evidence that he was authorized to keep the documents for five years after he last reported to work at CLS, crediting Plaintiff's testimony that he was authorized by management to take documents containing confidential patient information home

to correct errors and/or otherwise work on, as is required on a motion for summary judgment, a jury could find that it was reasonable for Plaintiff to have retained the documents after he went on disability leave and could, therefore, conclude that Plaintiff did not misappropriate the confidential patient information and that Defendant's reason for terminating him was pretextual.

Similarly, while Plaintiff's testimony that he was told by his superiors Rappaport and Stewart to "keep a log" of the errors in patient reports made by manager Karen MacEachen and to "make notes of anything that [Plaintiff] had done [with regard to what was] going on with the harassment [with] Ms. Karen MacEachen," does not necessarily indicate that he was authorized to keep the actual documents themselves in his possession as "evidence," a jury could rely on his testimony that Rappaport and Stewart told him to "keep [one of the documents] for his records" (Pl. Depo. at 67) in concluding that Plaintiff believed that the only way to keep the suggested log would be to preserve the documents containing the errors. The only evidence submitted by Defendant to counter Plaintiff's statements is the testimony of COO Marc Wolfert, who was not with the company at the time that Plaintiff was still reporting to work and who cannot conclusively negate Plaintiff's testimony that he was given special permission as a supervisor to bring these documents home to work on.

Moreover, this case is unlike those cited by Defendant in which summary judgment was granted to companies who fired employees for misappropriation of confidential information, as in those cases the plaintiffs either did not or could not dispute that their actions had violated company policy. *See Shider*, 2004 U.S. Dist. LEXIS 5068, at *16 (plaintiff did not deny that she violated the written confidentiality policy); *Hayles*, 2003 U.S. Dist. LEXIS 23407, at *64-66 (plaintiff admitted that her employer had been told by multiple witnesses that she had disclosed

confidential information and only stated once in her pleadings that the accusations were "false"); *Jordan*, 111 F. Supp. 2d at 235-36 (plaintiff could not contest that she had notice of company's confidentiality policy and did not argue that her employer deviated from its written policy).  In this case, by contrast, Plaintiff does dispute that he violated company policy, at least as it was applied to him as a supervisor.

Finally, Defendant argues that any inference of discriminatory intent is negated by the fact that Wolfert, who fired Plaintiff, did not know that Plaintiff was embroiled in a racial discrimination lawsuit against the company.  However, it is clear that "where the decision-maker responsible for the adverse action denies direct knowledge of the protected activity, knowledge can be shown through circumstantial evidence." *Alban-Davies v. Credit Lyonnais Securities*, 2002 U.S. Dist. LEXIS 5261, at *16 (S.D.N.Y. Mar. 29, 2002).  Here, not only did Wolfert admit in his deposition that he knew that Plaintiff had filed the confidential documents in connection with an action he had brought against CLS (Wolfert Depo. at 29), but the fact that the litigation had been going on for almost five years at that point provides extremely strong circumstantial evidence of knowledge on the part of the company's chief operating officer, who began working for CLS in 1996.  (Wolfert Depo. at 19.)   Thus, Defendant cannot avoid an inference of discriminatory intent by arguing lack of knowledge by Wolfert.

*CONCLUSION*

As Plaintiff has raised a triable issue of fact as to whether Defendant fired him in retaliation for refusing to drop his discrimination and worker's compensation lawsuits against the company, Defendant's motion for summary judgment is denied.

**SO ORDERED**.

                                            S/
                                SANDRA L. TOWNES
                                UNITED STATES DISTRICT JUDGE

Dated: Brooklyn, New York
       April 29 , 2005